177 P.3d 102 (2007)
COWLITZ COUNTY, a political subdivision of the State of Washington, Respondent,
v.
L. Carlyle MARTIN and Linda C. Martin, husband and wife; Lawrence Olstad and Roberta Kelly, husband and wife; Washington Mutual Bank; and U.S. Bank National Association ND, Appellants.
No. 34943-4-II.
Court of Appeals of Washington, Division 2.
August 14, 2007.
*103 Robert Maurice Gregg, Attorney at Law, Vancouver, WA, for Appellants.
Ronald S. Marshall, Attorney at Law, Kelso, WA, for Respondents.
PENOYAR, J.
¶ 1 Cowlitz County filed a petition for condemnation to acquire an expanded easement over the Martins' property in order to replace the existing culvert for Baxter Creek at Coyote Lane. The trial court granted the petition, and the Martins appealed. Because the petition for condemnation contained no lawful basis, we reverse the trial court's order granting the petition.

FACTS
¶ 2 Sometime in early 2002, Cowlitz County decided to replace a culvert located where Baxter Creek intersects Coyote Lane.[1] The County applied for a grant of approximately $447,000 from the Salmon Recovery Fund[2] for this project. The Salmon Recovery Funding Board approved the grant in April 2002. County engineering manager Ryan Lapossa explained that the County wished to replace the Baxter Creek culvert solely because it posed an impediment to fish passage.
¶ 3 At the time of the grant, the County held an easement for the existing culvert, but the replacement culvert required a larger easement. Beginning in April 2005, the County began making offers to enlarge its existing easement through voluntary purchase and sale, but the parties did not reach an agreement.
¶ 4 On October 18, 2005, the Cowlitz County Board of Commissioners passed Resolution No. 05-152 authorizing the County prosecuting attorney to file a petition for condemnation of the larger easement. The resolution stated that "the Baxter Creek Culvert Replacement Project is necessary to remove and replace the existing culvert that has been identified as a barrier to fish passage and the Salmon Recovery Funding Board has awarded a grant for the project." Clerk's Papers (CP) at 32. The resolution also stated, "the Board finds that the property, rights to be acquired are necessary to accommodate replacement of the Baxter Creek Culvert and reconstruction of Coyote Lane and constitute a public use of such property." CP at 32. Shortly thereafter, the County filed the petition for condemnation with the Cowlitz County Superior Court.
¶ 5 The petition seeking condemnation filed by the County's prosecuting attorney alleged an additional reason for condemnation. The petition stated that condemnation was necessary to replace the existing Baxter Creek culvert because (1) "[t]he existing culvert acts as a barrier to fish passage," and (2) the existing culvert "is not adequate to handle stream flows under a 100-year design storm." CP at 1 (emphasis added). This was the first mention of the County's need to replace the culvert to handle storm stream flows.
¶ 6 In response to the County's petition, the Martins filed a motion to dismiss. The Martins' motion to dismiss argued, in part, *104 that the trial court lacked subject matter jurisdiction to condemn the property because (1) the County Board of Commissioners acted without authority when it condemned the Martins' property for salmon passage, (2) the Salmon Recovery Act does not authorize counties to condemn private property, and (3) salmon passage does not constitute a "public use" under RCW 8.08.010.
¶ 7 The trial court held an evidentiary hearing on May 19, 2006, and ruled in favor of the County, denying the Martins' motion to dismiss and granting the County's petition. The trial court found that (1) the replacement of the Baxter Creek culvert would promote fish passage and accommodate 100-year storm water flows, (2) these two uses constitute "public uses", and (3) to accomplish these two purposes, it is necessary that the County acquire the sought-after easement rights. The Martins now appeal.

ANALYSIS
I. Standard of Review
¶ 8 Jurisdiction is a question of law and therefore we review de novo. Crosby v. Spokane County, 137 Wash.2d 296, 301, 971 P.2d 32 (1999); State v. Squally, 132 Wash.2d 333, 340, 937 P.2d 1069 (1997).
II. Washington Counties' Authority to Condemn Private Property
¶ 9 The power of eminent domain is an inherent power of the state. State v. King County, 74 Wash.2d 673, 675, 446 P.2d 193 (1968) (citing Miller v. City of Tacoma, 61 Wash.2d 374, 378 P.2d 464 (1963)). This power is limited by our state constitution and must be exercised under lawful procedures. King County, 74 Wash.2d at 675, 446 P.2d 193. Delegation of the State's sovereign power of eminent domain to the State's political subdivisions must be expressly given or necessarily implied, and. statutes conferring such power must be strictly construed. See, e.g., City of Des Moines v. Hemenway, 73 Wash.2d 130, 137, 437 P.2d 171 (1968); State v. King County, 33 Wash.2d 76, 81-82, 204 P.2d 514 (1949).
¶ 10 We must determine whether there was a lawful basis for the order of condemnation. The parties' arguments on this question are simple. The Martins assert that the County condemned their property without authority because the condemnation was to enable salmon passage in the Baxter Creek, and the legislature has not explicitly granted counties the authority to condemn private property for this purpose under the Salmon Recovery Act, nor does such a purpose qualify as a "public use" under RCW 8.08.010. In response, the County asserts that it has authority under the Salmon Recovery Act and other statutes to condemn the easement. Specifically, the County points out that in its petition for condemnation, it purported that the condemnation was necessary to prevent road damage and public danger in the event of a 100-year storm. However, the record does not reflect that the Commissioners considered or were even aware of this issue when they made their finding that condemnation was necessary. This justification was first advanced by the County's prosecuting attorney when he filed the condemnation petition.
¶ 11 We face three questions of first impression: (1) whether the Salmon Recovery Act authorizes the State or its entities to condemn private property; (2) whether Resolution 05-152 contains a valid alternative finding of public use for the project; and (3) whether a prosecuting attorney has the authority to articulate an additional purpose for condemnation not articulated by the Board of Commissioners in their resolution.
A. The Salmon Recovery Act
¶ 12 In 1999, the Washington State Legislature enacted the Salmon Recovery Act in an attempt to improve salmonid fish runs throughout the state. RCW 77.85.005. The Legislature found that efforts to repair and improve salmonid fish runs should be based on "a strong locally based effort" and that "the state may best accomplish this objective by integrating local and regional recovery activities." RCW 77.85.005. Under the Salmon Recovery Act, counties, cities, and tribal governments seeking state funds to repair and improve salmonid fish runs must designate the repair or improvement in a "habitat project list." RCW 77.85.050. *105 Scientific analysis as described in RCW 77.85.060 must support all projects on the habitat project list. RCW 77.85.050. Once the project is placed on the habitat project list, the county, city or tribal government may apply for state funding of the project to the Salmon Recovery Funding Board. RCW 77.85.150, .170. It is significant here that, although any project may be placed on the habitat project list, "[n]o project included on a habitat project list shall be considered mandatory in nature and no private landowner may be forced or coerced into participation in any respect." RCW 77.85.050(1)(a).
¶ 13 Statutes authorizing a county, city or municipality to exercise eminent domain must be clear and strictly construed. E.g., Hemenway, 73 Wash.2d at 137, 437 P.2d 171. We find nothing in the Salmon Recovery Act granting a county, city or tribal government authority to condemn private property. In fact, we find significant indication to the contrary. There are several instances where the Act states that any habitat project that occurs on private property requires the express consent of all of the affected property owners. RCW 77.85.010(3), .050(1)(a), .060(2)(b). Clearly, the Legislature did not intend to grant any eminent domain authority by passage of the Salmon Recovery Act. Thus, Washington counties, cities, and tribal governments have no authority to condemn private property under the Salmon Recovery Act.[3]
B. Alternate Findings of Public Use
¶ 14 Respondents argue that repairing and improving salmonid fish runs supports condemnation in this case under chapter 8.08 RCW which confers the power of eminent domain to Washington counties when the condemnation is necessary for a "public use." RCW 8.08.010.
¶ 15 In the Salmon Recovery Act, our Legislature clearly elected not to grant eminent domain power to protect this public interest for projects solely funded and regulated by the Salmon Recovery Act. Because the County Commissioners authorized condemnation solely for the purpose of fish passage by means of a project funded and regulated by the Salmon Recovery Act, we must adhere to the authority granted in the Salmon Recovery Act, rather than the broader grant of condemnation power found in RCW 8.08.020. While condemnation for the improvements potentially could be authorized for some other purpose, or even for fish passage under some other provision of the law, the Salmon Recovery Act strictly forbids condemnation for projects solely undertaken under its provisions. Respondents point to two phrases in Resolution No. 05-152 and argue that the project was also authorized for a county road project under Chapter 8.08 RCW. The phrases are "Acquiring an Easement by Condemnation for a County Road Project" in the title and "reconstruction of Coyote Lane . ." in paragraph three. CP at 32. A reading of the entire resolution shows that the project had no road improvement purpose independent of the culvert replacement under the Salmon Recovery Act; once the new culvert was installed, the road bed of Coyote Lane would have to be replaced. The County Commissioners chose to proceed under the Salmon Recovery Act and authorized condemnation for no other public purpose. In this situation they may not proceed at trial under RCW 8.08.020.
C. Prosecuting Attorney's Authority to Articulate New Purpose
¶ 16 Counties have clear statutory authority to condemn property for roadways and for storm water control facilities. E.g., In re the Matter of Seattle Monorail Auth., 155 Wash.2d 612, 121 P.3d 1166 (2005); State v. Dawes, 66 Wash.2d 578, 583, 404 P.2d 20 (1965); Hallauer v. Spectrum Props., Inc., 143 Wash.2d 126, 149-50, 18 P.3d 540 (2001). The Martins argue that the Board of Commissioners did not act to exercise this general *106 authority and acted only to protect salmonid fish runs. They point out that the Board of Commissioners' resolution mentions only salmon runs and claim that allowing the prosecuting attorney to allege other reasons for the condemnation in the action filed in the trial court is an unlawful delegation of the power of condemnation.
¶ 17 "[T]he necessity and expediency of exercising the power of' eminent domain are to be decided by the grantee of the power." King County v. Farr, 7 Wash.App. 600, 606, 501 P.2d 612 (1972) (citing I. Levey, Condemnation in U.S.A. § 15 (1969) ). RCW 8.08.010 grants power of eminent domain to counties, who in turn, exercise this authority through their respective Board of Commissioners. RCW 36.32.120. The county must determine the necessity requiring the condemnation. Here, the Board of Commissioners determined repair of fish passage necessitated the condemnation. They made no other finding of necessity and the record reflects no other basis for such a finding. Thus, this case is unlike other situations where we find an unarticulated but persuasive reason in the record to support a decision under review. The County's prosecuting attorney has no authority to determine the necessity for a condemnation, and therefore acted without authority when articulating an additional purpose for replacing the culvert, i.e. protection from 100-year storm waters.
¶ 18 We hold that the Salmon Recovery Act does not authorize counties to condemn private property to further projects undertaken solely under its provisions, and that a prosecuting attorney does not have authority to articulate a different or additional purpose for condemnation not stated by the county.
¶ 19 Accordingly, we reverse.
We concur: HOUGHTON, C.J., and QUINN-BRINTNALL, J.
ORDER GRANTING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION AND SUBSTITUTING NEW OPINION
¶ 20 The published opinion in this case was filed on August 14, 2007. The respondent, Cowlitz County, has filed a motion for reconsideration.
¶ 21 Upon consideration this court is hereby withdrawing said opinion and substituting the attached new opinion.
¶ 22 Further, this court is granting the motion for reconsideration.
NOTES
[1] The existing culvert consisted of a round corrugated steel cylinder. The proposed replacement would be a three-sided concrete box, allowing the streambed to remain in its natural state. RP 10-12.
[2] See RCW 77.85.150.
[3] At oral argument, the County cited the additional authority of RCW 36.82.070, which states the purposes monies paid to a county road fund may be used for. This statute allows any money paid to any county road fund to be used for any county road purposes, including "the removal of barriers to fish passage related to county roads." RCW 36.82.070. We fail to see how this citation is helpful. RCW Title 36, chapter 82 explains how a county creates, funds, and expends county road funds. Nothing in the title authorizes a county to condemn private property.